No. 05-429

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 164

JUSTIN SARTORI,

          Plaintiff and Respondent,

    v.

S & S TRUCKING, INC., a Montana corporation,
and ANTHONY STACY,

          Defendants and Appellants.

APPEAL FROM:    The District Court of the Nineteenth Judicial District,
                    In and For the County of Lincoln, Cause No. DV 2003-162,
                    Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Amy N. Guth, Attorney at Law, Libby, Montana

        For Respondent:

                John R. Quatman, Quatman & Quatman, Whitefish, Montana

Submitted on Briefs:  April 19, 2006

Decided:   July 19, 2006

Filed:

_____
                     Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Justin Sartori sued his business partner, Tony Stacy, for breach of corporate fiduciary duty with regard to their corporation, S & S Trucking, Inc. ("S & S"). Stacy answered the complaint and asserted a counter-claim. Although the District Court concluded that Sartori breached his fiduciary duties to S & S, the court did not grant damages and/or attorney fees to Stacy, and because the corporation's loan was under Sartori's name, the court ordered S & S dissolved unless Stacy paid off or refinanced the loan within a set time.

¶2     We restate the appeal issues as follows:

¶3     1. Did the District Court err in ordering corporate dissolution when it did not find that the corporation had been injured?

¶4     2. Did the District Court err in not awarding damages and/or attorney fees to S & S, even though it concluded Sartori breached his fiduciary duty to the corporation?

## BACKGROUND

¶5     In 2003, Stacy, who worked as a truck driver, approached his friend, Sartori, also a trucker, about purchasing a hauling business. Sartori expressed interest in the proposal, and the two men applied for a business loan with First Interstate Bank in Eureka in order to make the purchase. Because Sartori had a good credit history and Stacy did not, the bank agreed to loan Sartori the money. The bank finalized the loan listing "JUSTIN M. SARTORI DBA: S & S TRUCKING" as the borrower. The loan was for a term of years in the amount of $78,493.68. Although the bank did not list Stacy as a borrower on the

2

loan, he nonetheless pledged his logging truck and trailer as collateral. Sartori pledged twenty acres of real property that he owned with his wife.

¶6    On August 23, 2003, Stacy and Sartori signed the articles of incorporation for S & S, which the Secretary of State approved. While stock certificates were never actually issued, Stacy and Sartori agreed that they would be the only shareholders and would each own an equal number of shares. The partners designated Stacy as President and Sartori as Secretary/Treasurer, and hired Tanya Pluid as the office manager.

¶7    Within weeks after forming the corporation in September 2003, Stacy and Sartori began to realize that they had incompatible working styles. Several incidents occurred in which Sartori did not show up when or where Stacy expected. Stacy came to believe that Sartori was not pulling his weight and therefore proposed some changes in the way the parties initially agreed to pay out earnings from the company's income. Sartori refused to approve the changes and the relationship further deteriorated. Both men contacted attorneys to see about disentangling from the corporation. Eventually, Stacy scheduled a meeting for November 22, 2003, to iron out the parties' differences, but Sartori refused to attend once he decided the notice was for a board of directors meeting and that Stacy failed to notify him sufficiently in advance per the bylaws.

¶8    Prior to the November 22, 2003, meeting, Sartori engaged in a number of actions to undermine S & S, including incorporating a new trucking company, Brimstone Enterprise ("Brimstone"), on October 31, 2003. In addition, Sartori contacted the Eureka Post Office to have S & S's mail forwarded to Sartori's mail box; he transferred S & S's

3

Department of Transportation ("DOT") number to Brimstone; he cancelled or transferred S & S's vehicle licenses; he contacted S & S's suppliers and cancelled or attempted to cancel S & S's accounts; he closed S & S's bank account; and he attempted to transfer S & S's insurance to Brimstone. Sartori also contacted businesses with whom S & S worked in an effort to transfer their business to Brimstone. For example, when Eureka Pellet Mill told Sartori that it was obligated to honor its contract with S & S, Sartori started getting up early in the morning and hauling sawdust to the Eureka Pellet Mill—on behalf of Brimstone—before Stacy arrived at work. S & S could no longer do interstate business until it received a new DOT number, as Sartori had transferred S & S's number to Brimstone. Sartori's actions caused S & S to incur other losses and expenses, including trailer rent, trailer repairs, trip permit fees, and cell phone fees.

¶9 On December 18, 2003, Sartori sued Stacy for breach of corporate fiduciary duty and demanded judicial dissolution of S & S. Stacy answered the complaint and filed a counter-claim alleging that Sartori engaged in deceit, intentional interference with a business contract, intentional interference with prospective economic advantage, defamation, and breach of fiduciary duty. The District Court conducted a bench trial and found that "Sartori did everything in his power to sabotage S & S after he quit the company on November 17, 2003," and therefore had breached his fiduciary duty to the business. Although the District Court stripped Sartori of his interest in the company and his positions as a director and an officer, the court rejected Stacy's proposal to keep S & S in business under its current corporate identity. The court disagreed with Stacy's

4

contention that the loan should stay in place under Sartori's name until S & S paid it in full, because, while the court explicitly found that Sartori's actions were "tortious," it did not believe "tying up Sartori's credit and property for the next five years" was an appropriate remedy. Thus, the court ordered Sartori removed as a shareholder and director of S & S, and awarded him no compensation for his interest in the corporation. Further, the court held that unless Stacy and/or S & S paid off or refinanced the bank loan by July 1, 2005, action would be taken to dissolve the corporation.

¶10 The court grounded its decision in § 35-1-938, MCA, which provides that a corporation is subject to judicial dissolution in a proceeding by a shareholder if a deadlock exists. The court noted that neither Stacy nor Sartori disputed that the requisites for judicial dissolution had been met.

## STANDARD OF REVIEW

¶11 In reviewing a district court's conclusions of law, our standard of review is plenary and we must determine whether the court's interpretation of the law is correct. *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 21, 329 Mont. 129, ¶ 21, 122 P.3d 1220, ¶ 21.

¶12 When reviewing an award of damages, the standard of review is whether the trial court abused its discretion. *Sletteland v. Roberts*, 2000 MT 382, ¶ 36, 304 Mont. 21, ¶ 36, 16 P.3d 1062, ¶ 36 (citing *Edington v. Creek Oil Co*. (1984), 213 Mont. 112, 127, 690 P.2d 970, 978).

5

**DISCUSSION**

¶13 **1. Did the District Court err in ordering corporate dissolution when it did not find that the corporation had been or was threatened with injury?**

¶14 The District Court dissolved S & S pursuant to § 35-1-938(2), MCA, which states that a district court may dissolve a corporation in a proceeding by a shareholder if it is established that:

> (a) the directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, **and** *irreparable injury to the corporation is threatened or being suffered* **or** *the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally because of the deadlock*;
> (b) the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent;
> (c) the shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired; or
> (d) the corporate assets are being misapplied or wasted.

(Emphases added.) The District Court determined that dissolution of S & S was appropriate pursuant to subsection (a).

¶15 Stacy maintains on appeal that, rather than dissolving the corporation, the District Court, using its power under § 35-1-939, MCA, should have simply removed Sartori as a shareholder and director of the corporation. While Stacy appears to concede that he and Sartori were unable to break their management deadlock as to corporate affairs, he argues that the court failed to find any harm to the corporation per the statutory language. Stacy stresses the fact that S & S is now a twelve-employee company that has thrived in the

6

wake of Sartori's departure. Since there has been no corporate injury, Stacy argues, there can be no dissolution.

¶16 In making this argument, Stacy ignores relevant statutory language. Section 35-1-938(2)(a), MCA, provides that the court may order dissolution if "irreparable injury to the corporation is threatened or being suffered **or** *the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally because of the deadlock*." (Emphases added.) Stacy and Sartori were S & S's only shareholders. Although the corporation may not have suffered irreparable injury, the District Court found that the management deadlock led Sartori to take numerous steps to sabotage the corporation. As a result, the business and affairs of S & S could no longer be conducted to the advantage of the shareholders, Stacy and Sartori. The court properly exercised it statutory authority when it dissolved S & S.

¶17 In dismissing Stacy's argument, we note that he cites cases that apply § 35-1-921(1)(a)(i), MCA, the predecessor to § 35-1-938, MCA, to support his contention that the District Court only had authority to dissolve the company if it found corporate injury. The earlier statute provided that a corporation can be dissolved in an action "by a shareholder" when it is established that:

> the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock and that irreparable injury to the corporation is being suffered or is threatened by reason thereof.

Section 35-1-921(1)(a)(i), MCA (1985).

7

¶18 While the earlier rendering includes similarities to the present statute, the two differ in key respects. First of all, under the former statute, irreparable injury is a prerequisite to dissolution. Under the present statute, irreparable injury is listed in the disjunctive and is thus not necessary. Further, the older version does not provide that a "court" may dissolve a corporation because "the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally because of the deadlock." In light of these differences between the two statutes, Stacy's references to cases discussing the predecessor statute are not pertinent to our analysis.

¶19 We hold that the District Court correctly ordered dissolution of S & S pursuant to § 35-1-938(2)(a), MCA.

¶20 **2. Did the District Court err in not awarding damages and/or attorney fees to S & S, even though it concluded Sartori breached his fiduciary duty to the corporation?**

¶21 Stacy argues that, at trial, he proved that S & S sustained damages amounting to $24,585.24 as a consequence of Sartori's attempts to compete with and eliminate the company.[1] Although the District Court did not make a specific dollar finding for the amount Sartori damaged S & S, the court did conclude that Sartori breached his fiduciary duty to S & S, causing damages to the corporation "in excess" of the $4,625.54 Sartori

---

[1]The damages allegedly proved at trial include: $12,000 in lost profit; $4,622.57 in trailer repair; $36 for a new post office box; $30 for a DOT number; $300 for a new MC number; $120 in GVW fees; $3,285 in trip permit fees; $3,600 for rental trailer; and $591.67 in cell phone bills.

8

claimed as reimbursement for fuel costs. The court thus held that S & S did not owe Sartori any financial compensation.

¶22    While Stacy agrees with the court's finding that S & S does not owe Sartori reimbursement, he argues that the court erred in not ordering Sartori to pay S & S damages for the amount Sartori damaged the corporation in excess of $4,625.54. We agree. Given that the court clearly found Sartori had damaged S & S in an amount "in excess" of $4,625.54, it was incumbent upon the court to quantify the damages and award appropriate damages to the corporation. Accordingly, we reverse and remand for a determination of damages to be paid by Sartori in favor of S & S.

¶23    As for Stacy's request for attorney fees, we conclude that the District Court did not abuse its discretion in denying such compensation to S & S, as the agreement terms contained no specific provision entitling attorney fees to the prevailing party in a civil action. *National Cas. Co. v. American Bankers Ins*., 2001 MT 28, ¶ 27, 304 Mont. 163, ¶ 27, 19 P.3d 223, ¶ 27.

¶24    Affirmed in part and reversed in part.


                                                    /S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

9

Chief Justice Karla M. Gray, dissenting.

¶25 I do not disagree with the Court's analysis. I respectfully dissent from its Opinion, however, because it is my view that this matter is not properly before us. Accordingly, I would dismiss the appeal without prejudice.

¶26 The action underlying this appeal was tried to the District Court. That court filed findings of fact, conclusions of law, and a judgment on May 2, 2005. The final substantive part of the judgment provides that Stacy and/or S & S must make arrangements to pay off or refinance the loan at the Bank by July 1, 2005; if the loan has not been renegotiated or paid off by that time, the court is to be notified in writing and "appropriate action will be taken to dissolve the corporation and extinguish the corporation's liabilities." Notice of entry of this judgment was filed on June 7, 2005, and Stacy and S & S filed a notice of appeal on June 13, 2005.

¶27 The Court interprets this judgment as one ordering corporate dissolution and premises its discussion of the issues raised on that interpretation. In my opinion, the judgment is not one ordering a corporate dissolution, but merely one clarifying that an order or decree of corporate dissolution would be entered in the future absent Stacy and/or S & S satisfying the conditions set forth in the judgment. Consequently, this judgment is not a final judgment from which an appeal can be taken.

¶28 Section 35-1-938(2), MCA, does vest discretion in a trial court to dissolve a corporation under the circumstances discussed by the Court. Section 35-1-942, MCA,

10

however, makes it clear that a decree or order of dissolution is necessary to effectuate a judicial dissolution as of a date certain. After the decree of dissolution is filed, the only actions remaining are the winding up and liquidation of the corporation's business and affairs—under the direction of the trial court—as set forth in other statutes. *See* § 35-1-942, MCA.

¶29 In the present case, the District Court's judgment was neither a decree nor an order of dissolution. It was, in effect, a warning that such a decree of dissolution would be forthcoming unless certain events occurred. The notice of appeal divested the District Court of further jurisdiction in this matter. For that reason, that court could not address the merits of the motion to dissolve and response to motion to dissolve filed by the parties thereafter.

¶30 I conclude this appeal is not properly before us because it was not taken from a final judgment. Consequently, and notwithstanding the related year of unnecessary delay in the underlying case, I would dismiss this appeal as prematurely taken and return the case to the District Court for further proceedings. I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY

11