DA 12-0383

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 148

GENE CHARLES ROLAND and
MELINDA FAITH ROLAND,
Trustees of the Roland Family Trust
Dated March 4, 1994,

        Plaintiffs and Appellants,

   v.

FRED ALLEN DAVIS, SR.  and
BARBARA DAVIS,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                     In and For the County of Ravalli, Cause No. DV 09-282
                     Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Stephen R. Brown, Elena J. Zlatnik, Garlington, Lohn & Robinson, PLLP;
                Missoula, Montana

        For Appellee:

                Dustin M. Chouinard, Markette & Chouinard, P.C.; Hamilton, Montana

                              Submitted on Briefs:  March 20, 2013
                                       Decided:  June 4, 2013

Filed:

                                   _____
                                            Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Appellants Gene Charles Roland and Melinda Faith Roland, Trustees of the Roland Family Trust Dated March 4, 1994 (collectively "Roland") appeal from the order of the Twenty-First Judicial District, Ravalli County, in favor of Appellees Fred Allen Davis, Sr. and Barbara Davis (collectively "Davis") regarding a dispute over the existence of a ditch easement. We affirm.

¶2 We address the following issue on appeal:

¶3 *Whether the District Court properly determined that Roland had no ditch easement across property owned by Davis?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 Roland began buying property in Ravalli County in 1991. Roland purchased a 50-acre parcel from Roger and Beverly Russ (collectively "Russ") in 1993. The warranty deed for this 50-acre parcel from Russ contains no express mention of water rights, ditch easements, or appurtenances. Roland nevertheless believed that a water right from Bunkhouse Creek came with the property. Roland further believed that a ditch easement existed to transport the water from Bunkhouse Creek to his property. The parties completed and filed a water right transfer certificate as part of the closing documents.

¶5 Roland never has irrigated any of the 50-acre parcel. He has used the 50-acre parcel for grazing of cattle and horses. Roland participated in a U.S. Forest Service fire reduction program sometime in the mid-2000s. The program encouraged property owners to remove new growth and undergrowth in an effort to reduce the chances of wildfire. Roland removed

2

new growth and undergrowth from the entire 50-acre parcel. Roland left trees growing in the newly created meadows with the expectation that he later would harvest the trees as a cash crop.

¶6     Davis purchased real property from Russ in 1994. The Davis property lies adjacent to, and directly west of, the 50-acre parcel owned by Roland. The Smith Ditch historically had crossed the Davis property. No ditches were observable on the Davis property at the time of the purchase in 1994. No water rights from Bunkhouse Creek attached to the Davis property.

¶7     An existing road provides Davis with access to the house on his property from the public road. Davis applied a "road base" to the access road to the property. Davis did not widen the access road or remove any culverts. Davis replaced one culvert that had collapsed where Bunkhouse Creek crosses the access road. Davis found no other culverts that would indicate the presence of any ditch remnants on the property.

¶8     Davis took advantage of the same fire reduction program offered by the U.S. Forest Service in the mid-2000s. Davis observed for the first time traces of an old ditch across the property after the tree thinning work. The tree thinning work also revealed that someone had filled a portion of an old ditch.

¶9     A 1958 Ravalli County Water Resources Survey (Water Resources Survey) depicts the Smith Ditch traversing from Bunkhouse Creek to a "place of use" on the 50-acre parcel now owned by Roland. The point of diversion for the water right associated with this ditch, known as the Bunkhouse Creek Water Right, lies on Bitterroot National Forest. Water

3

historically diverted from this point traveled southeasterly across Bitterroot National Forest land, across the Davis property, and onto the 50-acre parcel now owned by Roland.

¶10 A 1957 field note from the Water Resources Survey indicates that the water right from Bunkhouse Creek was in use via the Smith Ditch for irrigation of a 20-acre place of use on the 50-acre parcel owned by Roland. Russ, Roland's predecessor-in-interest to the 50-acre parcel, filed a statement of claim on the Bunkhouse Creek Water Right in 1982 to irrigate a total of 30 acres. A 1994 preliminary decree from a Water Master of the Montana Water Court issued as part of the general statewide water adjudication process for the Bitterroot River Basin included the statement of claim. The Montana Water Court later reduced the place of use to 20 acres in 2004 following hearings and stipulations.

¶11 Roland attempted to reopen use of Smith Ditch after the Water Court's ruling. Roland and Davis could not agree on whether a ditch easement existed across the Davis property. Roland eventually filed a complaint against Davis on May 19, 2009, that sought preliminary and permanent injunctive relief, declaratory judgment, and damages. Davis denied the allegations and filed a counter-claim to quiet title. The District Court eventually reduced the trial to the following issues: (1) whether Roland has a ditch easement across the Davis property; (2) whether Davis had interfered with Roland's ditch easement; (3) the amount of damages that Roland may have suffered as a result of Davis's interference; and (4) Davis's counter-claim to quiet title.

¶12 Karl Uhlig, a water resource specialist, provided expert testimony and reports regarding the status of any easement for Roland. Tracey Turek did the same for Davis. The

4

experts made separate site visits, researched DNRC water rights records regarding Smith Ditch and Bunkhouse Creek, and reviewed available maps, USDA aerial photographs, and the 1958 Water Resources Survey. Turek also researched various deeds related to the Davis property and the 50-acre parcel owned by Roland.

¶13 Neither expert could identify any definitive point of diversion at Bunkhouse Creek. Neither expert found physical evidence of any sort, such as head gate ruins, old boards, or an old rock pile, that might have served as a point of diversion. The experts instead attempted to identify the point of diversion through the use of an overlay from the Water Resources Survey that depicted the Smith Ditch in the 1950s.

¶14 Uhlig's site visit map depicts the route of Smith Ditch from the likely point of diversion on Bunkhouse Creek, across U.S. Forest Service Land, across the Davis property, and across the 50-acre parcel owned by Roland. Uhlig's map depicts the Smith Ditch in three separate color schemes to designate the following sections: (1) sections evident on the ground; (2) sections not evident on the ground; and (3) trace ditch locations.

¶15 The section of Smith Ditch that traverses U.S. Forest Service land and the western portion of the Davis property appears evident on the ground and largely intact. Even on the U.S. Forest Service land, however, the ditch has washed out in several spots, a large boulder blocks the entire ditch in one spot, and trees several inches in diameter grow in the ditch. Fire reduction work in the mid-2000s revealed the ditch between the boundary of the U.S. Forest Service land and Bunkhouse Road on the western edge of the Davis property.

5

Bunkhouse Road completely severs the ditch and the parties found no remnants of any culvert there.

¶16 The ditch appears to split into an upper and a lower lateral at some point before it enters the Davis property. The Bunkhouse Road severs both laterals. Trees four to eight inches in diameter grow in the remnants of the two laterals and along the banks.

¶17 Roland's access road again severs the ditch on the 50-acre parcel owned by Roland. Roland installed the access road for fire prevention purposes within a year or two after purchasing the parcel in 1993. The ditch appears more evident on the 50-acre parcel to the east of the access road.

¶18 The District Court found that Smith Ditch "could be restored with a few days' work." This work would involve the installation of a new head gate at the point of diversion, reconstruction of several sections, cleaning growth and debris from the ditch, and installation of culverts at the points where the access roads and Bunkhouse Road cross. The District Court further found, however, that the 1957 field note from the Water Resources Survey represents the last evidence of use of Smith Ditch for irrigation.

¶19 A USDA aerial photograph from 2009 shows the road system that blocks the ditch. The place of use on the 50-acre parcel appears as a 20-30 year old pine forest. A 1995 USDA aerial photograph depicts a similar scene. The place of use in the 1995 photograph appears "somewhat tree-covered." A 1979 USDA aerial photograph likewise depicts the same road network. The place of use appears as "an open cleared area" in 1979.

6

¶20　Davis's predecessor-in-interest constructed the access road across the Davis property before 1979. This same road still provides access to Davis's house. As a result, the District Court found that the construction of this access road before 1979 had halted use of Smith Ditch as a conveyance of irrigation water from Bunkhouse Creek to the 50-acre parcel owned by Roland. The District Court further found that Roland's predecessor-in-interest had abandoned Smith Ditch before 1979 when he constructed this access road. The District Court concluded that Roland retains no ditch easement across Davis's property. Roland appeals.

## STANDARD OF REVIEW

¶21　We review for clear error a district court's findings of fact. *Boyne USA, Inc. v. Spanish Peaks Dev., LLC*, 2013 MT 1, ¶ 28, 368 Mont. 143, 292 P.3d 432. Clear error exists if substantial credible evidence fails to support the findings of fact, if the district court misapprehended the evidence's effect, or if we have a definite and firm conviction that the district court made a mistake. *Boyne USA*, ¶ 28. We review for correctness a district court's conclusions of law. *Boyne USA*, ¶ 28.

## DISCUSSION

¶22　*Whether the District Court properly determined that Roland had no ditch easement across property owned by Davis?*

¶23　Roland contends that any water rights appurtenant to the 50-acre parcel passed to him upon his purchase from Russ in 1993. He cites the Court's decision in *Adams v. Chilcott*, 182 Mont. 511, 518, 597 P.2d 1140, 1145 (1979), to support the general proposition that

7

water rights accompany the land "if the property is transferred without an express reservation of the appurtenant water rights." We agree that any water rights associated with the 50-acre parcel passed to Roland.

¶24 Roland further argues that he also received a ditch easement "by operation of law" upon transfer of the property to provide a delivery system of the appurtenant water rights. This Court long has recognized, however, that ditch easements and water rights represent separate and distinct property rights. *Mildenberger v. Galbraith*, 249 Mont. 161, 166, 815 P.2d 130, 134 (1991). Indeed, "[o]ne may own a water right without a ditch right, or a ditch right without a water right." *Connolly v. Harrel*, 102 Mont. 295, 300, 57 P.2d 781, 783 (1936).

¶25 Roland acknowledges that the warranty deed that memorialized the transfer from Russ to him in 1993 contains no mention of any express easement. Roland argues on appeal, however, that he received an "implied easement" from existing use. Roland points out that the same person formerly owned both the Davis property and the 50-acre parcel now owned by Roland. The former owner irrigated the place of use on the 50-acre parcel with water transported through the Smith Ditch across the Davis property.

¶26 Roland needed to prove the following three elements at trial in order to establish an easement by implication: (1) separation of title; (2) a use that is apparent and continuous at the time the property is divided; and (3) reasonable necessity of the easement for the beneficial enjoyment of the land granted or retained. *Albert G. Hoyem Trust v. Galt*, 1998 MT 300, ¶¶ 22-23, 292 Mont. 56, 968 P.2d 1135. Roland satisfies the first factor as the

8

Davis property and the 50-acre parcel owned by Roland remained under common ownership until 1993.

¶27 We address in more detail the second factor. With respect to the apparent nature of the ditch, Roland argues that Davis should have discovered the ditch easement through "reasonable inspection." Discovery upon reasonable inspection represents the "minimum standard that must be met" to establish apparent use. *Hoyem Trust*, ¶ 23. This reasonable inspection, according to Roland, takes two forms. First, the 2008 deed from Russ to Davis conditioned the title "SUBJECT TO all . . . easements . . . apparent on the premises." Roland argues that the mere presence of the "subject to" language in the deed "provides constructive notice of the possible existence of an easement or other encumbrance."

¶28 We generally have required the constructive notice provided by these "subject to" provisions in deeds to be accompanied by evidence on the ground, or on a plat, of a potential easement or encumbrance. For example, in *Burleson v. Kinsey-Cartwright*, 2000 MT 278, ¶¶ 20-21, 302 Mont. 141, 13 P.3d 384, cited by Roland, the party opposed to the easement had constructive notice of an easement provided by the "subject to" provision in the deed and actual notice of the existence of an easement when she had inspected the property before purchase. The undisputed evidence in the record indicated that "all roads, including summer access roads, were developed and in place before any tract of land within the subdivision was sold." *Burleson*, ¶ 21. Consequently, the objector's on-site inspection of the property before she purchased the property had converted the constructive notice provided by the deed into actual notice of the easements. *Burleson*, ¶ 21.

9

¶29 The second form of reasonable inspection urged by Roland involves the reality of the property at the time of the purchase in 2008, irrespective of the language in the deed. Roland contends that Davis admitted that portions of the ditch and remnants of the ditch remained visible at the time of the trial. He further cites the reports and expert testimony of Uhlig and Turek that included discussion of existing portions of the ditch. By comparison with *Burleson*, however, Davis testified that he saw no evidence of any ditches on the property when he inspected it before purchase in the winter of 1994. He admitted to having seen some remnants of ditches after the snow had melted in the spring. Trees grew in the ditch remnants and no water ever flowed. More ditch remnants became visible on Davis's property only after Davis had completed the tree thinning program.

¶30 More importantly, with respect to the continuous use of the alleged easement, the District Court found that the 50-acre parcel owned by Roland had not been irrigated "at least since 1979." The court cited first the series of USDA aerial photographs that showed forest gradually covering the place of use on the 50-acre parcel. The court also relied upon the fact that the roadway system across the Davis property and the 50-acre parcel prevented use of Smith Ditch to transport irrigation water from Bunkhouse Creek to the place of use on the 50-acre parcel. The District Court found that the roadway system "was constructed prior to 1979, was in use prior to purchase by the parties of their respective properties, and remains in use today." The court finally determined that the roadway system had "obliterated portions of the Smith Ditch."

¶31 Davis argues further that the Smith Ditch was in use "[a]t no time during the Russes' ownership of the property." Russ did not acquire the Davis property or the 50-acre parcel until 1981. The District Court specifically found that the place of use on the 50-acre parcel had not been irrigated since at least 1979. The roadway system that obstructed use of Smith Ditch had been constructed before 1979. Substantial evidence in the record supports these findings of the District Court. *Boyne USA*, ¶ 28.

¶32 Roland argues that mere nonuse proves insufficient to establish intent to abandon an easement. We agree. The Court in *Shammel v. Vogl*, 144 Mont. 354, 362, 396 P.2d 103, 107 (1964), affirmed a determination by the district court that an easement holder had not abandoned the easement. The Court acknowledged that abandonment involves a voluntary act that requires "a concurrence of act and intent." *Shammel*, 144 Mont. at 359, 396 P.2d at 106. The testimony presented in the record related "exclusively to establishing periods of nonuser" with no evidence of intent. *Shammel*, 144 Mont. at 362, 396 P.2d at 107.

¶33 Roland's claim of an implied easement means that he must do more than simply demonstrate that his predecessor-in-interest did not intend to abandon Smith Ditch. Roland must establish apparent and continuous use of Smith Ditch at the time that he purchased the 50-acre parcel from Russ in 1993. *Hoyem Trust*, ¶ 23. The District Court found that no water had flowed through Smith Ditch "at least since 1979." Unlike the mere nonuse in *Shammel*, Roland's predecessor-in-interest actually had created the impediments to the use of Smith Ditch through the installation of the roadway system. No functioning ditch existed when the Russ took title to the property in 1981.

11

¶34    Roland failed to present evidence that Russ, or another predecessor-in-interest, took any steps to undo these impediments to the use of the Smith Ditch before Russ split the 50-acre parcel and the Davis property. Russ did not install new culverts to allow water to pass through the ditch at the numerous points where it crossed the roadway system. Russ did not remove trees that blocked the ditch. And Russ did not clear any trees from the place of use of the irrigation water on the 50-acre parcel.

¶35    Roland cites only to the fact that Russ filed a statement of claim in 1982 for water rights from Bunkhouse Creek with a place of use on the 50-acre parcel now owned by Roland. Ditch easements and water rights represent separate and distinct property rights. *Mildenberger*, 249 Mont. at 166, 815 P.2d at 134. Nothing contradictory arises from the fact that Roland may own a water right from Bunkhouse Creek without a ditch right to transport the water to its place of use on his 50-acre parcel. *Connolly*, 102 Mont. at 300, 57 P.2d at 783.

¶36    Substantial evidence supports the District Court's determination that Roland failed to establish continuous use of the Smith Ditch easement at the time that Roland purchased the 50-acre parcel from Russ in 1993. The deed that transferred the 50-acre parcel contains no mention of the Smith Ditch easement. Roland failed, in turn, to establish that he had received an implied easement for the use of Smith Ditch when he purchased the property. *Hoyem Trust*, ¶¶ 22-23. Roland's failure to establish that he had received an implied easement relieves us of the need to evaluate whether Roland's predecessor-in-interest intended to abandon the Smith Ditch easement.

¶37     Affirmed.

                                        /S/ BRIAN MORRIS


We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE