FILED

07/25/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0463

DA 16-0463

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 180

KENT WOOD and TINA WOOD,

        Plaintiffs and Appellees,

    v.

IRENE ANDERSON, DARLENE STOVER, SANDRA
MELNRICK, GINGER HEGEMAN, DIANE MARICH,
and IRENE ANDERSON and DARLENE STOVER,
as Personal Representatives of the Estate of Stella C.
Sellmer and the ESTATE OF STELLA C. SELLMER,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                    In and For the County of Sanders, Cause No. DV-14-26
                    Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Linda Osorio St. Peter, Michael O'Brien, St. Peter Law Office, PC,
                Missoula, Montana

        For Appellees:

                S. Charles Sprinkle, Sprinkle Law Firm, PC, Libby, Montana

                        Submitted on Briefs:  May 3, 2017

                                Decided:  July 25, 2017

Filed:

                                    _____
                                            Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Irene Anderson, Darlene Stover, Sandra Melnrick, Ginger Hegeman, Diane Marich, the personal representatives of the Estate of Stella C. Sellmer, and the Estate of Stella C. Sellmer (collectively Defendants) appeal from the order of the Twentieth Judicial District Court, Sanders County, entering judgment in favor of Kent and Tina Wood (the Woods).  We affirm in part, reverse in part, and remand for entry of a revised judgment.

¶2     We restate the issues on appeal as follows:

*Issue One:  Did the District Court err in concluding that the Woods had an enforceable contract to purchase real property?*

*Issue Two:  Did the District Court err in entering a judgment against Anderson, Stover, and Hegeman, jointly and severally?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     Bill and Stella Sellmer (the Sellmers) owned a ninety-six-acre tract of real property in Sanders County, Montana.  They had five daughters:  Irene Anderson (Anderson), Darlene Stover (Stover), Sandra Melnrick (Melnrick), Ginger Hegeman (Hegeman), and Diane Marich (Marich).  In 2006, the Sellmers, the grandparents of Kent Wood, entered into an oral agreement with the Woods to sell five acres of their property to the Woods for $30,000 plus surveying costs.  On August 16, 2006, the Woods commissioned a surveyor and expended $3,474.32 to complete the survey project, paying the last invoice for the project on September 1, 2010.  On September 11, 2008, the

2

Woods paid the Sellmers $15,000 by cashier's check as partial payment for the five-acre tract.

¶4 On March 16, 2009, Bill Sellmer wrote a letter to his tax preparer, seeking advice on how to declare the partial payment for his property on his tax return. The letter also stated that Bill Sellmer deposited the $15,000 check in September 2008. Before the Woods completed the land survey, Bill Sellmer requested that his attorney, Naomi Leisz (Leisz), prepare the needed real estate transfer documents. She prepared a Land Purchase Agreement that was never signed, likely because the survey was not completed until September 2010. On October 22, 2010, Bill Sellmer died and his property passed intestate to his wife Stella, who then died on January 9, 2011.

¶5 On March 7, 2011, Leisz, representing Anderson and Stover as personal representatives of Stella Sellmer's estate, sent a letter to the Woods, asking for any additional documents pertaining to the sale of the five-acre property. Beginning on May 22, 2011, Anderson and Stover published a notice to creditors in the local newspaper for three consecutive weeks. Following the receipt of the letter from Leisz, the Woods discussed the matter with Kent's mother, Ginger Hegeman (Hegeman). Hegeman assured them that the property would not be transferred out of the estate until any interest they had in the property had been addressed. An email dated January 19, 2012, confirmed the Woods' account of Hegeman's representation. On April 24, 2012, the personal representatives Anderson and Stover filed a statement to close the estate and executed a deed of distribution, thus terminating their appointment as personal

3

representatives and distributing the right, title, and interest of the ninety-six-acre property to distributees Anderson, Stover, Hegeman, Melnrick, and Marich.

¶6　On January 24, 2014, the Defendants entered into a contract to sell the entire 96 acres from the estate for $299,000, inclusive of the five-acre tract, to another buyer. The Woods became aware of the sale of the property and, on March 27, 2014, filed suit against the Defendants for breach of contract, negligent or intentional infliction of emotional distress, fraud, and unjust enrichment.[1] On April 13, 2015, the District Court denied the Defendants' motion for summary judgment and, on July 25, 2016, entered judgment in favor of the Woods, finding that Defendants Anderson, Stover and Hegeman were wrongfully enriched and in breach of an enforceable contract. The court issued judgment against Anderson, Stover and Hegeman, jointly and severally, for compensatory damages, pre-judgment interest, and statutory costs. The Defendants filed a timely notice of appeal with this Court. Additional facts will be provided as necessary to address the issues raised.

**STANDARD OF REVIEW**

¶7　The construction and interpretation of a contract is a question of law that this Court reviews for correctness. *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 2013 MT 179, ¶ 25, 370 Mont. 529, 305 P.3d 781. We review de novo a district court's interpretation and application of a statute. *Dick Irvin, Inc. v. State*, 2013 MT 272, ¶ 18, 372 Mont. 58, 310 P.3d 524. In reviewing a district court's conclusions of law, our

---

[1] The Woods' filed their original complaint on March 27, 2014, and an amended complaint on June 30, 2014.

standard of review is plenary and we must determine whether the court's interpretation of the law is correct. *Sartori v. S & S Trucking, Inc.*, 2006 MT 164, ¶ 11, 332 Mont. 503, 139 P.3d 806.

## DISCUSSION

¶8      *Issue One:  Did the District Court err in concluding that the Woods had an enforceable contract to purchase real property?*

¶9      The Defendants first appeal from the District Court's conclusion that the Woods had an enforceable contract to purchase the five-acre tract from the Sellmers.  The court concluded that the Woods had an enforceable contract because they partially and substantially performed their part of the oral contract and were willing and able to complete the transaction.  We affirm.

¶10     Under §§ 28-2-903(1)(d), 70-20-101, and 30-11-111, MCA, an agreement for the sale of real property is invalid under the statute of frauds unless the agreement, or some note or memorandum of the agreement, is in writing and subscribed by the party to be charged.  We have held that the note or memorandum may consist of several writings, and that it need not be in any particular form, or contain the entire contract.  As long as the writing or writings include all the material terms, even if such terms are stated generally, the contract is valid.  *Olsen v. Johnston*, 2013 MT 25, ¶ 20, 368 Mont. 347, 301 P.3d 791 (citing *Johnson v. Ogle*, 120 Mont. 176, 181-82, 181 P.2d 789, 791 (1947); *Hughes v. Melby*, 135 Mont. 415, 421, 340 P.2d 511, 515 (1958); *Kluver v. PPL Mont., LLC.*, 2012 MT 321, ¶ 38, 368 Mont. 101, 293 P.3d 817; *Dineen v. Sullivan*, 123 Mont. 195, 199, 213 P.2d 241, 243 (1949)).  "The material terms of a contract for the sale of

5

real property will include the parties, the subject matter, a reasonably certain description of the property affected, the purchase price or the criteria for determining the purchase price, and some indication of mutual assent." *Olsen*, ¶ 21.

¶11  We review a district court's findings of fact for clear error. *Roland v. Davis*, 2013 MT 148, ¶ 21, 370 Mont. 327, 302 P.3d 91.  Clear error exists if substantial, credible evidence fails to support the findings of fact, if the district court misapprehended the evidence's effect, or if we have a definite and firm conviction that the district court made a mistake. *Roland*, ¶ 21.  In this case, the District Court identified several writings which established the existence of a valid, written contract between the Woods and the Sellmers.  The writings here include:  1) the unsigned Land Purchase Agreement; 2) the land survey describing the property to be sold, paid for by the Woods; 3) the $15,000 check issued by Tina Wood to Bill Sellmer, who then endorsed and deposited the check; and 4) the letter from Bill Sellmer to his tax preparer referencing the $15,000 he received as partial payment for the "piece of ground" he sold.  Each of these writings contain one or more terms referencing the parties involved and the sale, description, and purchase price of the property.  Additionally, because Bill Sellmer deposited the check, told his accountant that he had sold a portion of his property, allowed for the survey to be completed on his property, and because the survey proposal, cashier's check, and tax preparer letter were each signed by either Bill Sellmer or the Woods, there exists sufficient indicia of mutual assent in this case to find the existence of a written, enforceable contract.

¶12    Additionally, even in the absence of a written contract, we have "long recognized the doctrine of part performance as an exception to the Statute of Frauds." *Morton v. Lanier*, 2002 MT 214, ¶ 20, 311 Mont. 301, 55 P.3d 380; *see also* §§ 70-20-102, 30-11-111, MCA. In *Epletveit v. Solberg*, 119 Mont. 45, 169 P.2d 722 (1946), we explained this Court's view of the exception:

> Where one party, to an oral contract has, in reliance thereon, so far performed his part of the agreement that it would be perpetrating a fraud upon him to allow the other party to repudiate the contract and to set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute and will enforce the contract by decreeing specific performance of it, or by granting other appropriate relief.

*Epletveit*, 119 Mont. at 57, 169 P.2d at 729. In the present case, the District Court concluded that Woods sufficiently performed on the contract to their detriment and in reliance on the contract. Tina Wood paid the Sellmers $15,000, which Bill Sellmer acknowledged in his letter to his tax preparer as partial payment for a piece of land he had sold. The Woods also expended $3,474.32 to complete a land survey on the Sellmers' property. It is beyond real dispute that the Woods did these things to their detriment and in reliance on the contract. To hold otherwise would be to allow the Defendants to perpetrate a fraud on the Woods. Since the property was subsequently sold to a bona fide purchaser, the court properly granted the Woods other appropriate, equitable relief. As such, we conclude that the District Court properly determined that the Woods had an enforceable contract to purchase the five-acre tract and suffered compensatory damages in the amount of $18,474.32.

¶13 *Issue Two: Did the District Court err in entering a judgment against Anderson, Stover, and Hegeman, jointly and severally?*

¶14 The Defendants also appeal the District Court's judgment in favor of the Woods and against Defendants Anderson, Stover, and Hegeman, jointly and severally. The Defendants contend that the court erred in entering judgment against them because of the period of limitations contained in §§ 72-3-803, -1011, and -1013, MCA.

¶15 Montana's probate code contains limitations periods, also known as nonclaim provisions, which govern the presentation of claims against a decedent's estate, an estate's personal representatives, and any subsequent distributees. Sections 72-3-803 (limitations on creditor's claims), 72-3-1011 (limitations on actions against personal representative), 72-3-1013, MCA (limitations on actions against distributees).

¶16 First, the District Court found that the Woods' claim was not time barred by § 72-3-803, MCA. We agree, but also conclude that the court's determination does not end the inquiry in this case. Section 72-3-803, MCA, requires creditors to file claims against an estate within a specified period of time or be forever barred from asserting their claim. Under § 72-3-801, MCA, a personal representative is required to give notice, either in writing or by publication, to the creditors of an estate. Unless a personal representative has already given written notice by mail or another form of delivery, the personal representative must publish a notice to creditors for three consecutive weeks "in a newspaper of general circulation in the county announcing the personal representative's appointment and address and notifying creditors of the estate to present their claims within 4 months after the date of the first publication of the notice or be forever barred."

Section 72-3-801(1), MCA. Section 72-3-803, MCA, further provides that all claims arising at or after the death of a decedent, including those founded on contracts not based on a contract with a personal representative, "are barred against the estate, the personal representative, and the heirs and devisees of the decedent" unless the claim is presented "within the later of 4 months after it arises" or "within 1 year after the decedent's death." Section 72-3-803(1)(a), 2(a)-(b), MCA.

¶17 In *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 108 S. Ct. 1340 (1988), the United States Supreme Court held that an unsecured creditor's claim is an intangible interest in property protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Pope*, 485 U.S. at 485, 108 S. Ct. at 1345. As such, the Court held that notice by publication is insufficient to protect a creditor's property interest where the identity of a creditor is known or "reasonably ascertainable": instead, a creditor must be given "notice by mail or other means as certain to ensure actual notice." *Pope*, 485 U.S. at 491, 108 S. Ct. at 1348 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S. Ct. 2706, 2712 (1983)).

¶18 Further, in *Boyer v. Sparboe*, 263 Mont. 289, 867 P.2d 1116 (1994), we held that an estate cannot use § 72-3-803, MCA, to a bar creditor's claim where the estate: 1) has actual notice of a claim; and 2) through a representation, gives assurances to the claimant that no creditor's claim action is necessary to protect the claim. *Boyer*, 263 Mont. at 294, 867 P.2d at 1119-20. In *Boyer*, a property owner contacted a deceased store owner's son about the coins and precious metals he had been storing at the family's gold and silver store. *Boyer*, 263 Mont. at 290, 867 P.2d at 1117. The son, who was not a personal

9

representative of the decedent's estate, assured Boyer that the property was safe at the store and, over the next two years, Boyer received further assurances to the same effect. *Boyer*, 263 Mont. at 290-91, 867 P.2d at 1117-18. However, when Boyer attempted to retrieve his property with a copy of the storage receipt, the store refused to return his property and Boyer filed a complaint seeking recovery of his gold and silver. *Boyer*, 263 Mont. at 291, 867 P.2d at 1118.

¶19 The district court found that Boyer's claim was barred because he failed to file a creditor's claim within the time limits contained in § 72-3-803, MCA. In reversing the district court, we found the statutory bar inapplicable because the estate "had actual knowledge of Boyer's claim" and because, "based upon the *family's* representations, Boyer assumed his claim was intact and that no creditor's claim needed to be filed." *Boyer*, 263 Mont. at 294, 867 P.2d at 1119 (emphasis added). Accordingly, we held that the estate was estopped from raising the nonclaim statute to bar Boyer's claim:

> We wish to emphasize that the rationale behind the statutory requirement that a creditor's claim be filed is sound and should not be easily dispensed with. However, under very limited circumstances, as in this case, where an estate has actual notice of a claim and makes representations to the claimant which lead the claimant to believe that it is not necessary to protect his claim by filing a creditor's claim under §§ 72-3-801 et seq., MCA, the estate will not be able to use the failure to file a creditor's claim as a defense to bar the claim.

*Boyer*, 263 Mont. at 294, 867 P.2d at 1119-20.

¶20 In this case, the Defendants ask us to ignore the holdings announced in *Pope* and *Boyer*. We decline to do so. As required by *Pope*, the Woods were entitled to receive actual notice to present their claims because they were known creditors of the estate, as

demonstrated by the Leisz letter asking for further verification of the contract and copying the personal representatives of the estate, Anderson and Stover. Additionally, and contrary to the Defendants' assertion, while the Leisz letter was sufficient to prove that the Defendants had knowledge of the Woods' property interest in the five-acre tract, the letter was insufficient to give actual notice to the Woods under § 72-3-801, MCA, because it did not notify them to present their claim within the statutory time period or be forever barred. Furthermore, because Hegeman, a family member of the decedent and an heir of the estate, made a representation to the Woods similar to the assurance made in *Boyer*, which led the Woods to believe that it was unnecessary for them to file a creditor's claim, our case law further precludes the estate from using the nonclaim statute as a defense to bar the claim. Thus, the District Court did not err in its conclusion that the Defendants could not use the limitation provided in § 72-3-803(2)(b), MCA, to bar the Woods' claim.

¶21 However, the court's determination under § 72-3-803, MCA, does not end our inquiry here because the statutory provision only applies to *claims against a decedent's estate*. The Commissioner's Comments accompanying the Uniform Probate Code[2] state that "a claimant whose claim has not been barred may have alternative remedies when an estate has been distributed subject to his claim." Unif. Probate Code § 3-1005 cmt. (2010). In this case, the estate had been closed and a deed of distribution had been filed prior to the filing of the Woods' complaint. *See Mathey v. Mathey*, 109 Mont. 467, 473,

---

[2] This Court often relies on the Commissioners' Comments accompanying the Uniform Probate Code when interpreting Montana statutes based on that code. *See In re Estate of Lettengarver*, 249 Mont. 92, 99, 813 P.2d 468, 473 (1991).

11

98 P.2d 373, 376 (1939) ("After distribution to the heirs or devisees, the estate ceases to exist."). Because the Woods did not petition the District Court to reopen the estate for consideration of their claims under Title 72, chapter 3, part 8, MCA, the Woods' alternative remedies in this case are provided in §§ 72-3-1011 and -1013, MCA, and subject to the period of limitations contained therein.

¶22 For instance, once an estate has been closed through the filing of a closing statement, a creditor may maintain a claim against a personal representative under § 72-3-1011, MCA, which states:

> Unless previously barred by adjudication and except as provided in the closing statement, the rights of successors and of creditors whose claims have not otherwise been barred against the personal representative for breach of fiduciary duty are barred unless a proceeding to assert the same is commenced within 6 months after the filing of the closing statement. The rights thus barred do not include rights to recover from a personal representative for fraud, misrepresentation, or inadequate disclosure related to the settlement of the decedent's estate.

Additionally, after an estate has been closed and its estate properties distributed, § 72-3-1012, MCA, states that the distributees take subject to undischarged, unbarred claims. Such claims are subject to the period of limitations provisions of § 72-3-1013, MCA, which states in pertinent part:

> (1) Unless . . . *otherwise barred*, the claim of any claimant to recover from a distributee who is liable to pay the claim . . . is forever barred at the later of 3 years after the decedent's death or 1 year after the time of distribution thereof.

> (2) This section does not bar an action to recover property or value received as the result of fraud.

Section 72-3-1013, MCA (emphasis added). Thus, this provision "describes an ultimate time limit for recovery by creditors . . . .of a decedent from distributees." Unif. Probate Code § 3-1006 cmt. (2010). In sum, while we agree with the District Court's determination the Woods' claim is not "otherwise barred" under § 72-3-803, MCA, we must now determine if their action can proceed under §§ 72-3-1011 and -1013, MCA, because the estate in this case has been closed and distributed.

¶23 Montana's probate code provides an overriding fraud provision, which enables a person injured by fraud to "obtain appropriate relief, including restitution against the perpetrator of the fraud or any person benefiting from the fraud, whether innocent or not, other than a bona fide purchaser for value and without notice." Section 72-1-111(1), MCA. Under this section, where a person institutes "an action to recover property or value received as the result of [a distributee's] fraud," the person must commence proceedings "within 2 years after the discovery of the fraud." Sections 72-1-111(2), 72-3-1013(2), MCA.

¶24 There are two kinds of fraud recognized in Montana: actual fraud and constructive fraud. Section 28-2-404, MCA. While we agree with the District Court's finding that the facts in this case do not support a finding of actual fraud, we conclude that the court's findings support the Woods' constructive fraud claim against the Defendants in this case. Under § 28-2-406, MCA, constructive fraud is defined as:

> (1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or

13

(2) any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

¶25 The presence of a legal duty is an essential element of a claim for constructive fraud. *Mattingly v. First Bank*, 285 Mont. 209, 218, 947 P.2d 66, 71 (1997). Whether a legal duty exists is a question of law for the court's determination. *H-D Irrigating, Inc. v. Kimble Props., Inc.*, 2000 MT 212, ¶ 25, 301 Mont. 34, 8 P.3d 95. "Although the legal duty which often exists in constructive fraud cases is a fiduciary one, this Court has previously held that Montana's constructive fraud statute 'does not require that the plaintiff demonstrate a fiduciary relationship, [but] merely requires the establishment of a duty.'" *H-D Irrigating,* ¶ 25 (quoting *Mattingly*, 285 Mont. at 219, 947 P.2d at 72). Under certain "special circumstances," constructive fraud "may exist where one party has acted to mislead the other in some way." *H-D Irrigating,* ¶ 25. For instance, "Where a party, by his words or conduct creates a false impression concerning serious impairments or other important matters and subsequently fails to disclose relevant factors, constructive fraud may be found." *Drilcon, Inc. v. Roil Energy Corp.*, 230 Mont. 166, 171, 749 P.2d 1058, 1061 (1988).

¶26 The Defendants argue that the Woods filed an untimely complaint under §§ 72-3-1011 and -1013(1), MCA, because it was filed more than: 1) six months after the filing of the closing statement; 2) three years after Stella Sellmer's death; and 3) one year after the final deed of distribution. The District Court rejected the Woods' constructive fraud claim after finding no evidence of false statements "that induced the Woods to do anything, or refrain from doing anything, regarding the formation or

14

performance of the contract." But the court also found the Hegeman e-mail an "arguabl[e]" exception, though it "merely caused [the] Woods to delay legal advice or initiat[e] legal action for a period of time." Given this finding, we conclude that the court did not err in concluding that the Woods were not time barred from making their claim in this case.

¶27 As a preliminary matter, we first address the Defendants' contention that the Woods filed an untimely complaint under § 72-3-1011, MCA. First, we agree with the District Court's finding that Defendants Anderson and Stover, as personal representatives, did not engage in fraudulent conduct in this case because the record does not demonstrate that Anderson or Stover misled the Woods to their detriment. Additionally, while § 72-3-1011, MCA, provides that a personal representative cannot invoke the six-month limitations period to bar a claim if the representative has made a misrepresentation or an inadequate disclosure, the Woods' complaint did not allege such conduct. Moreover, the Woods' complaint did not allege a breach of fiduciary duty on the part of Anderson and Stover and, even if they could maintain such an action,[3] they were time barred by the six-month limitation period contained therein. Thus, we conclude that the Woods could not maintain an action against Anderson and Stover, in their capacity as personal representatives, under § 72-3-1011, MCA.

---

[3] We note that "a personal representative of a decedent's estate does not owe fiduciary duties to a person having claims against the estate until the claim has been allowed." Unif. Probate Code § 3-703(b) cmt. (2010). Also, § 72-3-801(3), MCA, specifically states that a "personal representative is not liable to any creditor or to any successor of the decedent for giving or failing to give notice under this section."

¶28 As noted above, the District Court found that Hegeman's representations caused the Woods to delay legal advice or legal action on their claim. While the court downplayed this effect of Hegeman's representations,[4] we conclude that her misleading statements constitute a special circumstance which supports a finding of constructive fraud. Although no fiduciary relationship existed between the Woods and Hegeman, Hegeman, through her own representations, created a legal duty to disclose facts relevant to the closing of the estate and subsequent sale of the five-acre tract when she promised to protect the Woods' interest in the property. Specifically, Hegeman, Kent Wood's mother, made assurances to her son and daughter-in-law that she would personally see to it that no action would be taken to allow for the transfer of the five-acre tract until their interest in the property was first addressed. However, as the District Court found, at some point Hegeman "changed her mind" and acquiesced to the estate's plan to deny the Woods' claim of interest in the contract and the property, but failed to disclose her change in position to the Woods. In failing to tell the Woods that she had instead agreed to advance her own interest in the property over that of her son and daughter-in-law, Hegeman acted in direct contravention of her earlier promise to protect the Woods' interest over her own. Even if she lacked fraudulent intent, Hegeman's action and subsequent omission constituted constructive fraud because Hegeman and the other

---

[4] We note that in moderating the effect of Hegeman's representation, the District Court referenced its conclusion that the Woods could maintain a claim under § 72-3-803, MCA. However, as we explain above, the Woods could no longer maintain an action under this statute because, in this case, the estate had been closed and distributed and the Woods did not petition to reopen the estate in order to bring their creditor's claim.

16

distributees gained an advantage by misleading the Woods to their prejudice. Section 28-2-406(1), MCA.

¶29 Because the Woods filed their complaint within two years of discovering the fraud, which began when they became of aware of the land sale contract between the Defendants and a bona fide purchaser for value, the commenced action fell within the limitations period contained in § 72-1-111(2), MCA. While the District Court did not explicitly identify the fraudulent conduct in this case, its findings and conclusion support such a finding. As such, we affirm the District Court's order insofar as it entered judgment in favor of the Woods and against Defendants Hegeman, Anderson, and Stover for actual damages. *Dewey v. Stringer*, 2014 MT 136, ¶ 16, 375 Mont. 176, 325 P.3d 1236 (stating that "[w]e will not reverse a district court when it reaches the right result, even if it reached that result for the wrong reason"). However, we must also remand for an entry of judgment against Defendants Melnrick and Marich because, under § 72-3-1012, MCA, they have been joined in this proceeding and the statute requires them to also bear the cost of the claim. Section 72-3-1012(2), MCA ("As between distributees, each shall bear the cost of satisfaction of unbarred claims as if the claim had been satisfied in the course of administration.").

¶30 Based on the foregoing, we conclude that the District Court did not err in entering judgment in favor of the Woods and against Defendants Hegeman, Anderson, and Stover. At the same time, we must remand this case for an entry of judgment against all the distributees of the estate in accordance with § 72-3-1012(2), MCA.

17

## CONCLUSION

¶31 For the foregoing reasons, we affirm in part and reverse in part, and remand for an entry of judgment consistent with this Opinion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA