No. 85-206

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

NORTHWESTERN BANK OF LEWISTOWN,
a Montana Banking corporation,

        Plaintiff and Respondent,

    -vs-

ESTATE OF GEORGE F. COPPEDGE, JR.,
HELEN J. COPPEDGE,

        Defendant and Appellant.

    and

VERA J. COPPEDGE,

        Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Tenth Judicial District,
             In and for the County of Fergus,
             The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert E. La Fountain, (Helen J. Coppedge), Billings,
        Montana

    For Respondent:

        Timothy J. O'Hare, ( Northwestern Bank), Lewistown,
        Montana
        Leonard J. McKinney, (Vera Coppedge), Lewistown,
        Montana

_____

Submitted on Briefs: Nov. 6, 1985

Decided: January 21, 1986

Filed:     JAN 21 1986

*Ethel M. Harrison*

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Helen J. Coppedge and the estate of George F. Coppedge, Jr., appeal the January 4, 1985, judgment of the Tenth Judicial District Court. That judgment grants Northwestern Bank of Lewistown (Northwestern Bank) $18,807.39 in principal, $14,662.13 in interest up to the time of trial and interest from the date of trial to the date of judgment, pursuant to three promissory notes co-signed by George and Helen Coppedge.

George Coppedge, Jr. (deceased) and Stanley Larson were partners in a farm and ranch operation. The Articles of Co-Partnership provide that each partner contributes equally to the capital assets and property of the partnership and that each partner owns an undivided half thereof. Art. II of the Articles of Co-Partnership.

Deceased and his wife, Helen, borrowed money from Northwestern Bank to be used primarily for farming expenses. Three promissory notes and a security agreement were signed by the deceased and his wife on June 5, 1980. The notes, each due on February 1, 1981, were in the principal amounts of $1,500, $12,000 and $58,817.89. The security agreement included all farm machinery, vehicles and tools; all crops and livestock owned by the deceased, as well as his brand; and all accounts, contract rights and other rights to payment possessed by the deceased. In addition, the notes were secured by a $20,000 guaranty, signed by the deceased's mother, Vera Coppedge.

George Coppedge, Jr., died September 25, 1980. His wife was appointed personal representative in January of 1981. She provided notice to creditors of her husband's estate pursuant to § 72-3-801, MCA, starting January 25, 1981, and ending February 8, 1981. Northwestern Bank never filed a creditor's claim or commenced a court proceeding to protect

2

its claim against the estate during the time provided for in §§ 72-3-803 and 72-3-804(2), MCA. Instead, Northwestern Bank representatives negotiated, to no avail, with the estate's attorneys for payment or renewal of the note.

Whether with the permission of the deceased's personal representative or not, Stan Larson continued to operate the partnership after George Coppedge's death, pending its dissolution. Any complaint the deceased's personal representative has with respect to Larson's continued operation of the partnership is not properly the subject of this lawsuit or appeal.

Following George Coppedge's death, Larson completed three sales of livestock: 1) the sale November 5, 1980, of the partnership's calves for $33,385.79; 2) the sale November 20, 1980, of the deceased's cattle for $31,582.75; and 3) the sale December 2, 1980, of the deceased's bull for $991.15. The checks were each made payable to Stanley Larson, George Coppedge and Northwestern Bank, as Northwestern held a security interest in the cattle.

Stan Larson delivered the checks to Northwestern Bank. Larson, acting for himself, and Gale Dorn, representing Northwestern Bank, endorsed the checks. Thereafter, the checks were stamped for deposit only in the deceased's account and deposited therein. With respect to the first check, one-half, or $16,692.89, was paid to Larson for his one-half share in the cattle. The remaining $16,692.90 from the first check and the full amount of the other two checks were offset against deceased's promissory notes here at issue. No other payments have been made on those notes.

On June 15, 1982, Northwestern Bank filed a complaint seeking the unpaid principal balance on each of the notes, the interest on those notes and its attorney's fees and court costs. The complaint names the deceased's estate, Helen

3

Coppedge and Vera Coppedge as defendants. Helen Coppedge answered by way of a general denial. No affirmative defense or counterclaim was filed. Vera Coppedge answered, listing four defenses. She also cross-claimed against the estate and Helen Coppedge for any amount she might have to pay to Northwestern Bank as guarantor. Neither the estate nor Helen Coppedge responded to the cross-claim.

Trial was had June 5, 1984, following which judgment was entered for Northwestern Bank and against the defendants. In addition, judgment was entered for Vera Coppedge on her cross-claim against the estate and Helen Coppedge. The estate of the deceased and Helen Coppedge appeal, raising the following issue:

> Did the District Court err in finding that Northwestern Bank had the authority to offset the deposits to the checking account of George Coppedge, Jr., and Helen Coppedge and to credit those offsets against the promissory notes which are the subject of this action?

We find no error. The promissory notes provide that in the event of George Coppedge, Jr.'s death, Northwestern Bank may declare, without notice, the notes to be due and owing. Northwestern Bank may then, again without notice, offset against the notes' balances any balance standing to the deceased's credit. Admittedly, the proceeds from the cattle sale were not "standing to the deceased's credit" at the time of his death. However, since that money was derived directly from the sale of collateral, it also became collateral for the promissory notes. Section 30-9-306(1) and (2), MCA. Northwestern Bank's actions are supported by its security interest in the proceeds from the sale of the cattle and its adherence to the terms of the promissory notes and Articles of Co-Partnership.

We find no breach of the covenant of good faith and fair dealing by Northwestern Bank. It's decision to offset the notes' balances with the proceeds from the cattle sale

4

substantially reduced the amount of interest now due and owing, to appellants' benefit. See Regional Agricultural Credit Corporation of Spokane, Wash. v. Chapman (9th Cir. 1942), 129 F.2d 435.

Further, we find it unnecessary to address appellants' claim of wrongful conversion by Northwestern Bank. Such an allegation should have been raised as either an affirmative defense or a counterclaim. Appellants failed to plead it as either. Therefore, it was not considered by the trial court and will not be considered on appeal. Rule 8, M.R.Civ.P. and Old Fashion Baptist Church v. Montana Dept. of Revenue (Mont. 1983), 671 P.2d 625, 628, 40 St.Rep. 1774, 1778.

We turn next to appellants' attack on the validity of the judgment against them. Helen Coppedge claims the notes are not enforceable against her because she acted merely as an "accommodation maker" when signing them. There is nothing to indicate she acted as an accommodation maker. Her signature is on the notes and the security agreement, together with her husband's. She is liable as a co-debtor. At any rate, in Montana accommodation makers are primarily liable on the notes they sign. In the Matter of the Estate of Harbaugh (1982), 196 Mont. 274, 277, 639 P.2d 495, 497.

The estate claims the judgment against it is no good because Northwestern Bank failed to file a creditor's claim with the personal representative within the time limits set forth in § 72-3-803, MCA. Northwestern Bank claims § 72-3-803(3)(a), MCA, relieves them of the obligation to file a creditor's claim in this instance. That section states:

(3) Nothing in this section affects or prevents:

(a) any proceeding to enforce any mortgage, pledge, or other lien upon property of the estate
. . . .

5

This is not a proceeding to enforce "any mortgage, pledge, or other lien." Northwestern Bank is not seeking to foreclose on the secured debt, but to collect on the promissory notes. Therefore, § 72-3-803(3)(a), MCA, does not apply.

Northwestern Bank contends and the trial judge found that the estate, by and through its attorneys, knew of the bank's claim against the estate. Such knowledge, however, does not dispense with Northwestern Bank's need to file a creditor's claim. If Northwestern Bank can prove that the attorneys for the estate represented that because they knew of Northwestern Bank's claim, no creditor's claim need be filed and if the Bank relied on this representation, the estate could be estopped from raising Northwestern Bank's failure to file a creditor's claim as a defense. Norman v. State (1979), 182 Mont. 439, 443-444, 597 P.2d 715, 718. We therefore remand for a hearing to determine whether the estate, by or through its attorneys, represented to Bank that it need not file a creditor's claim.

Finally, appellants contend they need not reimburse or indemnify Vera Coppedge because the guaranty is only between Vera, Northwestern Bank and the deceased. In Vera Coppedge's trial brief dated July 5, 1984, she stated:

> It is true that the Guaranty runs solely to George F. Coppedge, Jr., and therefore the cross claim is addressed solely to the Estate of George F. Coppedge, Jr., by and through the personal representative of this Estate but we contend that any judgment rendered against the Estate or the personal representative thereof attaches to the assets of the Estate and is a lien upon such assets. Helen J. Coppedge is the personal representative of the Estate of George F. Coppedge, Jr., and in such capacity, judgment should be entered against her on the cross complaint.

By these comments, Vera dismissed her cross-claim against Helena Coppedge, individually. We therefore vacate the judgment of the trial judge insofar as it found for Vera on that portion of her cross-claim.

6

If the estate is not estopped from raising Northwestern Bank's failure to file a creditor's claim as a defense, Vera Coppedge is exonerated from responsibility under the guaranty. Section 28-11-211(1), MCA, states:

> When guarantor exonerated. (1) A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor without the consent of the guarantor the original obligation of the principal is altered in any respect or the remedies or rights of the creditor against the principal in respect thereto are in any way impaired or suspended.

If the Bank did indeed fail to file a required creditor's claim, it impaired its remedy against the principal without authorization of the guarantor. Therefore, guarantor would be discharged of any responsibility under her guaranty.

That portion of the judgment which grants judgment to Northwestern Bank against Helena Coppedge, individually, is affirmed. We vacate the balance of the judgment and remand for a hearing consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7