NO.  93-142

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994


BILL BOYER,

        Plaintiff and Appellant,

    -v-

ROBIN C. SPARBOE, as Personal
Representative of the Estate of
Charles W. Sparboe, Deceased,

        Defendant and Respondent.



FILED

FEB 02 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable Maurice R. Colberg, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Mark D. Parker, Parker Law Firm, Billings, Montana

        For Respondent:

        James P. Murphy, Murphy & Kirkpatrick, Billings,
        Montana


                        Submitted on Briefs:   January 7, 1994

                                   Decided:   February 2, 1994

Filed:

_____
            Clerk

Justice James C. **Nelson delivered the Opinion of the Court.**

Bill Boyer (Boyer) appeals from a judgment, entered after a bench trial, of the Thirteenth Judicial District Court, Yellowstone County, finding in favor of the defendant. We reverse.

The issue on appeal is as follows: did the District Court err when it concluded that Boyer was barred from retrieving his property from the estate due to his failure to file a creditor's claim?

**Boyer** had known and been friends with the owner of Treasure State Gold and Silver (Treasure State), Charles Sparboe (Chuck), for years. In addition, Boyer and Chuck did business together for a number of years, buying and trading metals.

By 1988, Boyer had accumulated a great deal of gold and silver and was concerned about its safety. Chuck offered to store the gold and silver in his safe at Treasure State. Chuck showed Boyer the safe and told Boyer that other people stored their coins and metals there.

On June 22, 1988, Boyer brought approximately $40,000 worth of gold and silver to Treasure State. He left the gold and silver with Chuck, and received a storage receipt which itemized the property as follows:

    $4,000 face 90% Quarters (4 - Buckets of 1,000.00)
    15 - 100 oz. Eng Ex (3 Bags of 5 Each)
    500 Silver Dollars (1 Bag)
    48 1 oz. U.S. Gold Eagles (2 Full Tubes 1 w/8)
    1 Blue Midland Bank Bag - Price & sell what is in it

**Boyer** never removed the gold and silver from Treasure State.

On July 31, 1990, Chuck was murdered, and Boyer attended his

2

funeral.    About two weeks after Chuck's death, Boyer contacted Aaron Sparboe (Aaron), Chuck's son, with his condolences and also to discuss his [Boyer's] property.    Aaron assured Boyer that the property was in good hands, and said "[t]he only thing we might have to do is replace some of the Gold Eagles with Canadian Maple Leaves." Aaron told Boyerto bring in the original storage receipt and he would be given his property.

Boyer talked to Aaron approximately five or six more times over the next two years, and Aaron assured him each time that his property would be returned upon the presentation of the original receipt.

Boyer did not remove his property immediately after Chuck's death, as he believed, based on Aaron's representations, that his property was safe.    However, Boyer later decided to remove the property; he believed the metals market was "waffling back and forth" and wanted to put his money into a better investment.

Boyer was unable to locate his original receipt, but had a copy of the receipt.    When Boyer went to Treasure State with the copy, Aaron and Chuck's other son, Jim Sparboe (Jim), refused to return the property.    They admitted to Boyer that they had his property, but said they would not release it to Boyer without an original receipt.    On March 9, 1992, Boyer filed a complaint seeking recovery of his gold and silver.

At the bench trial held on October 23, 1992, Boyer testified that he had diligently searched for the original receipt but was unable to locate it.    However, as a matter of course, he made

3

copies of all his receipts and put them in a notebook at his place of business. He testified that he made a copy of the original receipt the day he received it. He further testified that he believed the original receipt was placed in a "tax box" and, when he moved three times in five years, that box was inadvertently thrown out.

Defendant Robin Sparboe (Robin), widow of Chuck and the personal representative of his estate, testified that the only reason she would not return Boyer's property was because he had not brought in the original receipt. She further testified that she had absolutely no evidence that indicated Boyer had already picked up the property at issue, and admitted that the original receipt had not been returned to Treasure State. Robin said she would honor Boyer's claim if he presented the original receipt, and testified that Treasure State had honored claims of other people who had not filed creditor's claims with the estate.

Aaron testified at trial that he had returned stored property to people who presented original receipts without filing creditor's claims, and that he had never refused to return property to those people. Aaron also testified as follows:

> If there was a client that [Chuck] was a good friend with or somebody he knew well, they didn't have an original receipt, I know he never would ask for it. If they said they didn't have it with them, no big deal. He knows them. . . .

He further stated that he had no evidence that Boyer had already retrieved his property.

Jim testified that he had allowed people with original storage

4

receipts to retrieve their property regardless of whether they had filed creditor's claims with Chuck's estate. He stated that he had no evidence that Boyer had received his property. Jim further testified that the requirement that an original receipt be presented before property would be returned was not written down anywhere, but that customers were told of the requirement upon storing their property. However, there was absolutely no evidence that Boyer was told by his friend, Chuck, that an original receipt was required to be presented before Boyer could retrieve his stored property. There was also no evidence at trial that Boyer ever received the property at issue.

On November 6, 1992, the District Court entered Findings of Fact and Conclusions of Law. The court concluded that Boyer's claim was a "deposit for exchange" pursuant to § 70-6-108, MCA, and that Boyer's failure to file a creditor's claim with the estate barred his claim. Section 72-3-803, MCA. Boyer moved for reconsideration on November 25, 1992, which was subsequently denied by the District Court on December 15, 1992. Judgment was entered on July 8, 1993; from that judgment, Boyer appeals.

Our standard of review relating to conclusions of law is whether the trial judge's interpretation of the law is correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

The District Court held that the storage receipt constituted a "deposit for exchange," which necessitated the filing of a creditor's claim with the estate. In its Memorandum filed with the

5

Findings of Fact and Conclusions of Law, the District Court reasoned that, because Boyer did not necessarily expect to receive back the identical property he stored, a deposit for exchange was created pursuant to § 70-6-107, MCA. This created a debtor/creditor relationship under § 70-6-108, MCA; thus, the District Court reasoned, Boyer's failure to file a creditor's claim was fatal to his action. While the District Court's conclusion that a "deposit for exchange" was created was correct, we have previously held that, in certain limited circumstances, a creditor may, nevertheless, not be required to file a claim with the decedent's estate. That controlling precedent was not cited by the attorneys in this case, and the District Court failed to consider this precedent. Therefore, under the specific facts of this case, we hold that the District Court erred in concluding that Boyer was required to file a creditor's claim and in entering judgment against Boyer.

We have previously held that an estate could be estopped from raising a claimant's failure to file a creditor's claim as a defense under certain, limited conditions. Northwestern Bank of Lewistown v. Estate of Coppedge (1986), 219 Mont. 473, 478, 713 P.2d 523, 526. In Coppedge, the deceased, George, and his wife, Helen, borrowed money from the Northwestern Bank for farming expenses. George and Helen signed three promissory notes and a security agreement. The notes were also secured by a guaranty from George's mother. George died and Helen was appointed the personal representative of his estate. She provided notice to creditors as

6

required by statute, but, Northwestern Bank never filed a creditor's claim or commenced a court proceeding to collect its claim. However, Northwestern Bank did negotiate with the estate's attorney for payment or renewal of the notes. Coppedge, 713 P.2d at 525.

Nearly two years after George's death, Northwestern Bank filed a complaint seeking the unpaid amount due on the notes. The trial court entered judgment for the bank, and, on appeal, the estate claimed that the judgment against it was invalid because Northwestern Bank failed to file a creditor's claim within the statutory time limits. Northwestern Bank countered that the estate knew of the bank's claim. We held that:

> Such knowledge, however, does not dispense with Northwestern Bank's need to file a creditor's claim. If Northwestern Bank can prove that the attorneys for the estate representedthatbecause they knew of Northwestern Bank's claim, no creditor's claim need be filed and if the Bank relied on this representation, the estate could be estopped from raising Northwestern Bank's failure to file a creditor's claim as a defense. . . .

Coppedge, 713 P.2d at 526. We remanded for a hearing to determine whether the estate, by or through its attorneys, represented to the Northwestern Bank that it need not file a creditor's claim. Cowwedse, 713 P.2d at 527. We note that at least one jurisdiction has adopted a similar principle of law. See Matter of Estate of Frandson (N.D. 1986), 383 N.W.2d 807.

In this case, Boyer contacted Aaron approximately two weeks after Chuck's death and discussed his stored property. At that time, Aaron told Boyer "not to worry" and that the property was safe. Aaron told Boyer to bring in his storage receipt and the

7

property would be returned upon demand. Robin, Aaron and Jim all testified that they had paid many other customers' claims without the necessity of filing a creditor's claim, even after the statutory period had expired. In addition, Chuck had returned stored property in the past without the presentation of an original receipt. There was absolutely no evidence that Chuck ever told Boyer that an original receipt was required to retrieve his property, nor is there any evidence that Boyer has, in actuality, received his property. In addition, Boyer had a valid explanation for the loss of the original receipt. Similarly, there is no question that Chuck's estate had actual knowledge of Boyer's claim, and that, based upon the family's representations, Boyer assumed his claim was intact and that no creditor's claim needed to be filed. See Coppedge, 713 P.2d at 526. Therefore, based upon the facts of this case, we hold that the estate is estopped from denying the existence and validity of Boyer's claim and that the District Court erred in entering judgment in favor of the estate.

We wish to emphasize that the rationale behind the statutory requirement that a creditor's claim be filed is sound and should not be easily dispensed with. However, under very limited circumstances, as in this case, where an estate has actual notice of a claim and makes representations to the claimant which lead the claimant to believe that it is not necessary to protect his claim by filing a creditor's claim under §§ 72-3-801 et seq., MCA, the estate will not be able to use the failure to file a creditor's claim as a defense to bar the claim.

8

Reversed and remanded for entry of judgment in favor of Boyer.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices