DA 23-0746

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 35

IN THE MATTER OF THE ESTATE OF:

WARREN DAN EDDLEMAN,

     Deceased.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DP-22-300
Honorable Thomas Pardy, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Mark D. Parker, Michael L. Dunphy, Parker, Heitz & Cosgrove,
PLLC, Billings, Montana

                Gary W. Bjelland, Jardine, Stephenson, Blewett & Weaver, P.C.,
Great Falls, Montana

        For Appellee John Jay Pinkerton:

                Jared M. Le Fevre, Aaron W. Nicholson, Madeline M. Clarke,
Crowley Fleck PLLP, Billings, Montana

        For Appellee Tom Wagoner:

                Joseph L. Breitenbach, Christensen Fulton & Filz, PLLC, Billings,
Montana

                            Submitted on Briefs:  October 2, 2024
                                      Decided:  February 18, 2025

Filed:

                        _____
                                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     With hope of negotiating a resolution of a complicated estate proceeding, the estate's personal representative agreed to two extensions of time for creditors to respond to disallowances of claims. The sole devisee of the estate agreed to the first extension. As the deadline under the first extension neared and the parties worked on obtaining signatures for a stipulation requesting another extension, the personal representative's counsel assured the creditors he would not seek to bar claims as untimely if an extension order was not granted by the deadline. The sole devisee of the estate declined to agree to the second extension and, therefore, the stipulation was filed with the District Court without the sole devisee's signature. Although the second extension was initially granted by the District Court, upon the sole devisee's motion to reconsider, the District Court rescinded its order, effectively barring the pending creditors' claims. The claimants appeal, arguing Montana law authorizes personal representatives to extend the timeframe for petitions for allowance under certain circumstances without a devisee's consent, that the devisee's consent had actually been obtained in a prior memorandum of understanding, and that the estate was estopped from asserting the claims were time barred based upon the representations of the estate's counsel.

¶2     We address the following issues:

1. *Whether the District Court erred by ruling the personal representative lacked authority to unilaterally extend the timeframe in which creditors may respond to a disallowance of claims under § 72-3-804(3), MCA.*

2. *Whether the Estate is equitably estopped from raising a claim processing time-bar defense to Claimants' claims.*

2

*3. Whether the Memorandum of Understanding, signed by all interested parties, sufficiently established the devisee's consent to waive the statute of limitations defense under § 72-3-802(1), MCA.*

¶3 We reverse and remand for further proceedings pursuant to Issue 2, and do not reach Issue 3.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Warren Dan Eddleman (Dan) died on August 5, 2022. In his Last Will and Testament (Will), executed August 28, 2020, Dan named his friend, Tom Wagoner (Tom), as the "Independent Executor" of his Will.[1] The Will essentially devised all of Dan's property to his long-time friend and ranch hand, John Pinkerton (John), making him the sole devisee. Dan was survived by his daughter, Madelyn Lue Eddleman (Madelyn), ex-wife Sandra Eddleman (Sandra), and sister, Jobey Eddleman (Jobey). During his lifetime, Dan had established the Madelyn Lue Eddleman Trust (Trust) for the benefit of his daughter. His sister Jobey and Ron Williamson (Ron) serve as co-trustees of that Trust. Dan also maintained a majority membership interest in the Eddleman Oar Lock Ranch, LLC (the Ranch), with the Trust retaining the remaining minority membership. Pursuant to Dan's Will, the District Court appointed Tom as the Personal Representative (PR) of the Estate (Estate) on August 29, 2022.

¶5 Tom published a Notice to Creditors in The Billings Times, a weekly newspaper of general circulation, on September 1, 2022. The Notice stated: "NOTICE IS GIVEN that

---

[1] The Will describes Dan as "Warren Dan Eddleman of Comanche County, Texas," and references the Texas Estates Code. The Will was executed in Yellowstone County, Montana. No issues regarding residency or Texas law are raised in this appeal.

Tom Wagoner has been appointed Personal Representative of the above-named estate. All persons having claims against the deceased are required to present their claims within four months after the date of the first publication of this notice or the claims will be forever barred." In November of 2022, the Ranch, the Trust, John, Tom, and Ron entered a Memorandum of Understanding (MOU) in which Tom and Ron agreed to act as co-managers for the Ranch with John having "broad authority over the day-to-day activities" of the Ranch. The MOU also required the signatories to "act in good faith to manage the [Ranch] and administer the Estate of Dan Eddleman" and to "engage in reasonable discussions to resolve any remaining issues."

¶6      Sandra filed a creditor's claim against the Estate on December 27, 2022, claiming over one million dollars pursuant to her Divorce Agreement with Dan, in addition to warranty deeds for property in Montana and Texas, ranch equipment, and family heirlooms. Sandra's claim stated all amounts "are justly payable . . . and the balance claimed [] is justly due." Madelyn, though the beneficiary of the Trust, filed a claim in her individual capacity on December 28, 2022, demanding proceeds received by Dan before he died for the sale of 38 of her cattle, as well as $2,100 for a loan and $20,000 for an exchange of funds with Jobey. Madelyn's claim stated: "the above amount is justly currently due and payable." The Ranch filed a claim on December 29, 2022, claiming over one million dollars were owed by Dan to the Ranch for "loans due" and over four million dollars were owed by Dan to the Ranch's "Surplus Capital Account," in addition to over $650,000 owed for disproportionate distributions expected in 2023 pursuant to Sandra and

4

Dan's Divorce Agreement. The Ranch's claim noted that "the above amounts are justly currently due and payable." Jobey filed a claim on December 30, 2022, for Dan's funeral expenses, legal fees "to settle the assessment of a court in Texas," "$25,000 for [a] loan made to [Dan] at his request to help pay for expenses," over $20,000 for an exchange of funds with Madelyn, as well as interest on all loans. Jobey's claim listed the amounts as "justly currently due and payable." The Trust also filed a claim on December 30, 2022, for payments due to a law firm for being "brought into the divorce proceeding" of Sandra and Dan. The Trust's claims were described as: "justly currently due and payable," apart from a contingent claim for any "shortage" arising from making the Ranch's Surplus Capital Account whole. Sandra, Madelyn, the Ranch, Jobey, and the Trust are hereinafter referred to collectively as the "Claimants."

¶7 On February 23, 2023, Tom, as PR, mailed responses to the Claimants, fully disallowing some claims and allowing others in part.[2] On March 30, 2023, the PR, the Claimants, and John as sole devisee signed a Joint Stipulation for Extension of Time to Respond to Disallowance of Creditor's Claims (First Extension), extending the statutory deadline for Claimants to petition or commence a proceeding for allowance of their claims to June 23, 2023. Between March and June of 2023, John, the Claimants, and the PR discussed possible settlement of the claims, but no additional proceedings were initiated.

---

[2] The PR allowed Sandra's million-dollar claim based upon the Divorce Agreement between Sandra and Dan and disallowed the remainder of Sandra's claims for failure "to provide requisite evidence." The PR allowed certain amounts for funeral services paid by Jobey and disallowed the remainder of Jobey's claims for failure "to provide sufficient evidence." All other creditor claims were disallowed in full for failure "to provide sufficient evidence."

5

On June 19, 2023, Ron emailed the PR's counsel, Joey Breitenbach (Breitenbach), requesting another extension of the deadline for responding to the PR's disallowance of the claims, to which Breitenbach replied, "No problem. I can prepare the extension." Later that day, Breitenbach confirmed the PR's willingness to consent to the extension during a phone call with Ron. The next day, June 20, Breitenbach circulated for signature a Joint Stipulation for Second Extension of Time to Respond to Disallowance of Creditor's Claims (Second Extension), which was intended to extend the deadline for the "Claimants to file petitions for allowance of their respective claims until September 29, 2023."

¶8 On June 21, Ron emailed Breitenbach, asking about the status of the extension. Breitenbach responded: "I am waiting on [John's counsel's] signature . . . . To allay any concerns, I am confirming for you in writing that if we don't get the order back before [June] 23rd runs, I will not take the position that the creditor's claims are barred as a result thereof." On the afternoon of June 22, Breitenbach and John's counsel participated in a phone call, the details of which are disputed. After the phone call, John's counsel sent an email to Breitenbach stating: "[w]e are not going to consent to the stipulation." On June 23, the deadline set by the First Extension, Breitenbach notified the Claimants that John would not consent to the Second Extension. Breitenbach advised Ron that he would re-draft the Second Extension and circulate it without John's signature line. On Monday, June 26, Breitenbach emailed the redrafted Second Extension to the Claimants without a signature line for John. Signatures were returned the same day from Jobey, Sandra, and Madelyn. Ron signed the Second Extension on June 28. Breitenbach claims to have

6

delivered the Second Extension to the District Court after Tom signed it on Friday, June 30, while the Clerk of Court's timestamp shows the filing as Monday, July 3, 2023, at 10:55 a.m.

¶9 On July 18, 2023, the District Court entered an order granting the Second Extension, moving the deadline to petition for allowance of claims or commence a proceeding to September 29, 2023. On July 25, 2023, John filed a Motion to Reconsider, stating the court lacked subject matter jurisdiction over the matter, that the extension had not been timely filed, and that Montana law does not allow the PR to unilaterally consent to such an extension. Prior to September 29, 2023, the new deadline proposed by the Second Extension and initially set by the District Court, Claimants filed their respective petitions for allowance of claims. The District Court set a status hearing for October 23, 2023, ordering the parties to refrain from arguing their positions but, rather "to present the Court with their understanding of the issues yet to be decided." Following the hearing, the District Court granted an order for supervised administration of the Estate. Then, on December 7, 2023, the District Court issued its Order Rescinding Order Granting Joint Stipulation for Second Extension of Time to Respond to Disallowance of Creditor's Claims, stating:

> All parties at the hearing stipulated and agreed to the fact that the Stipulation provided to the Court and upon which the Court issued its Order was erroneous and was not stipulated to by all parties. Specifically, the sole heir under decedent's will, John Jay Pinkerton, did not stipulate to the "Stipulation" for an extension of time to respond to disallowance of creditors' claims. Consequently, the Court issued its Order based upon an erroneous misrepresentation of the Stipulation.
> . . .

7

All Creditors' Claims and all Petitions to challenge the denial or disallowance of creditors' claims filed after June 23, 2023, the time allowed under this Court's previous Order . . . are forever time barred and will not be heard.

The Claimants appeal.

## STANDARD OF REVIEW

¶10 "The interpretation of a statute is a question of law that we review for correctness." *City of Missoula v. Fox*, 2019 MT 250, ¶ 8, 397 Mont. 388, 450 P.3d 898. To that end, the District Court's determination to rescind a previous order based on its legal conclusions regarding whether creditor claims were time barred under statute is an issue we consider de novo. *See A.C.I. Constr., LLC v. Elevated Prop. Invs., LLC*, 2021 MT 246, ¶ 11, 405 Mont. 456, 495 P.3d 1054.

## DISCUSSION

¶11 Montana's probate code, based on the Uniform Probate Code, authorizes the PR to "settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and this code and as expeditiously and efficiently as is consistent with the best interests of the estate." Sections 72-3-610, -606, MCA. In doing so, a PR may proceed without a court order but has the option of invoking the "jurisdiction of the court . . . to resolve questions concerning the estate or its administration." Section 72-3-605, MCA. In a supervised administration, the PR has all powers of personal representatives under Montana law, except the authority to "make any distribution of the estate without prior order of the court." Section 72-3-404, MCA.

¶12 After being appointed, a PR must give notice to potential creditors of the estate and can accomplish this by publishing said notice in a local newspaper of general circulation for three successive weeks. Section 72-3-801(1), MCA. The notice must give the PR's address and announce that claims presented after four months from the date of the first published notice will be "forever barred." Section 72-3-801(1), MCA. Four months represents a special statute of limitations for creditors given actual notice by publication. Section 72-3-803(1)(b), MCA; *see also In re Estate of Allen*, 255 Mont. 469, 473, 843 P.2d 781, 784 (1992). Montana law also governs the manner in which claims are presented, stating:

> The claimant shall mail to the personal representative return receipt requested a written statement of the claim indicating its basis, the name and address of the claimant, and the amount claimed or may file a written statement of the claim, in the form prescribed by rule, with the clerk of the court. The claim is considered presented on the first to occur of receipt of the written statement of claim by the personal representative or the filing of the claim with the court. If a claim is not yet due, the date when it will become due must be stated. If the claim is contingent or unliquidated, the nature of the uncertainty must be stated. If the claim is secured, the security must be described. Failure to describe correctly the security, the nature of any uncertainty, and the due date of a claim not yet due does not invalidate the presentation made.

Section 72-3-804(1), MCA.

¶13 If a PR disallows all or part of a claim, creditors then have 60 days after receiving notice of disallowance, "if the notice warns the claimant of the impending bar," to petition for allowance of their claim(s), or to commence a proceeding against the PR. Section 72-3-805(1), MCA. If a claim is not presently due or is contingent or unliquidated, a PR "may consent to an extension of the 60-day period." Section 72-3-804(3), MCA. A PR

9

"with the consent of all successors whose interests would be affected, may waive any defense of limitations available to the estate." Section 72-3-802(1), MCA.[3]

¶14    *1. The PR lacked authority to unilaterally consent to the Second Extension because doing so constituted a waiver of a defense of limitations.*

¶15    Tom, as PR, mutually agreed with the Claimants and John, the sole devisee, to the First Extension of the 60-day statutory period for petitioning for allowance of the claims, as authorized by § 72-3-802(1), MCA. As that extended deadline approached, Tom, through the Estate's counsel, Breitenbach, agreed to a Second Extension of the time period. That consent was initially communicated by Breitenbach in an email to Ron, stating, "No problem. I can prepare the extension," confirmed by him in a telephone call, and, again, in writing when the drafted Second Extension was circulated to all Claimants and John by the PR's counsel. Additionally, two days before the deadline, Breitenbach assured Claimants that he would "not take the position that the creditor's claims are barred" if an order granting the Second Extension was not issued by the District Court before the First Extension's deadline. Thus, despite John's refusal to sign the Second Extension, there was no doubt about the PR's conveyed position in agreement with extending the timeframe in which Claimants, most of whom were not represented by counsel, had to respond.[4]

---

[3] This provision is also conditioned upon the estate being "solvent," an issue not raised here. Section 72-3-802(1), MCA.

[4] In the District Court, the PR argued the Second Extension was properly entered. On appeal, the PR takes the position that the District Court's order rescinding the Second Extension should be affirmed.

¶16    However, the PR lacked authority, without the consent of sole devisee, John, to extend the time in which the Claimants were required to petition for allowance of their claims or commence a proceeding.  A PR may "consent to an extension of the 60-day period" in three instances: 1) when the claims are "not presently due"; 2) when the claims are "contingent"; or 3) when the claims are "unliquidated."  Section 72-3-804(3), MCA. As the claims here were presented, they do not satisfy any of these exceptions.  The claims against Dan's Estate presented by the Ranch, Madelyn, and Jobey include sworn statements that the amounts listed therein are "justly currently due and payable."  Sandra's claim states: "All the above amounts are justly payable . . . [and] justly due."  The plain descriptors of these claims—currently or justly due—puts them outside the exception for claims "not presently due" under § 72-3-804(3), MCA.  The claims made by the Ranch, Madelyn, Sandra, and Jobey are not contingent, and have never been challenged as "unliquidated."

¶17    It is true that the Trust's claim against the Estate includes payments to a Texas law firm, as well as a "contingent claim" for any shortage in the instance the "fair market value of the [Ranch] is not made whole via the [Ranch's] claims on the Estate."  However, it also notes that "[a]ll the above amounts are justly currently due and payable."  A "contingent claim" is one "that *has not yet accrued* and is dependent on some *future event that may never happen*." *Contingent Claim*, *Black's Law Dictionary* (12th ed. 2024) (emphasis added).  An alleged right to repayment for specific loans and distributions to Dan from the Ranch when he was living would have already occurred and accrued.  Thus, we decline to

11

view the Trust's claim as a "contingent claim" under § 72-3-804(3), MCA. Therefore, because the claims fail to meet statutory exceptions for when a PR may extend the period in which creditors must respond to the disallowance of claims, we conclude Tom, as the PR for Dan's Estate, lacked authority to unilaterally consent to the Second Extension.

¶18 The passing of the deadline provided by the First Extension would have resulted in expiration of the claim processing statute of limitations for Claimants to challenge the disallowance of their respective claims. Section 72-3-803(1)(b), MCA. As noted, waiver of that limitation requires the consent of all successors, including devisees:

(1) Unless an estate is insolvent, the personal representative, *with the consent of all successors whose interests would be affected*, may waive any defense of limitations available to the estate. If the defense is not waived no claim which was barred by any statute of limitations at the time of the decedent's death shall be allowed or paid.

(2) The running of any statute of limitations measured from some other event than death or *the giving of notice to creditors* is suspended during the 4 months following the decedent's death but resumes thereafter . . . .

Section 72-3-802(1), (2) MCA (emphasis added). Claimants offer that their claims were not time-barred at the time of Dan's death, but that is a separate limitation issue based upon the substantive law governing the claim and does not affect the application of § 72-3-802, MCA, to Claimants' claims. As the Official Comments explain:

[U]nder 72-3-803 and 72-3-804 it is possible for a claim to be barred by the process of claim, disallowance and failure by the creditor to commence a proceeding to enforce his claim prior to the end of the four-month suspension period. *Thus, the regular statute of limitations applicable during the debtor's lifetime, the nonclaim provisions of 72-3-803 and 72-3-804, and the three-year limitation of 72-3-803 all have potential application to a claim. The first of the three to accomplish a bar controls.*

Section 72-3-802, MCA, *Annotations*, Off. Cmt. (2023) (emphasis added).

12

¶19 Thus, we agree with the District Court's conclusion that John's consent was necessary under the statute to effectuate the Second Extension. The claims would have been barred at the close of the time period agreed upon by all interested parties and authorized by the District Court under the First Extension. However, unlike the District Court, our analysis does not stop there, as we must consider the impact of the parties' communications that led to the Claimants' failure to timely petition for allowance or commence a proceeding.

¶20 *2. The Estate is equitably estopped from raising a claim processing time-bar defense for Claimants' claims.*

¶21 As explained above, Breitenbach communicated with the Claimants on several occasions "[t]o allay any concerns" that a Second Extension would be drafted and filed with the District Court, regardless of John's consent, and that any delay in obtaining an order (presumably granting the extension, as initially occurred) would not lead the PR to "take the position that the creditor's claims are barred as a result thereof." Claimants argue they reasonably relied upon Breitenbach's comments as "assurance" they were not required to take further action to protect their claims before the deadline under the First Extension passed.

¶22 This Court has previously recognized that a PR can be estopped from asserting a claim processing time limitation against a claim when the claimant's failure to bring the claim resulted from a PR's representations that no claim needed to be filed. *Northwestern Bank of Lewistown v. Estate of Coppedge*, 219 Mont. 473, 478, 713 P.2d 523, 526 (1986). In *Boyer v. Sparboe*, 263 Mont. 289, 867 P.2d 1116 (1994), we explained generally that

13

"an estate could be estopped from raising a claimant's failure to file a creditor's claim as a defense under certain, limited conditions." *Boyer*, 263 Mont. at 292-93, 867 P.2d at 1119 (citing *Northwestern Bank of Lewistown*, 219 Mont. at 478, 713 P.2d at 526). We later summarized the facts of *Boyer*, as follows:

> In *Boyer*, a property owner contacted a deceased store owner's son about the coins and precious metals he had been storing at the family's gold and silver store. The son, who was not a personal representative of the decedent's estate, assured Boyer that the property was safe at the store and, over the next two years, Boyer received further assurances to the same effect. However, when Boyer attempted to retrieve his property with a copy of the storage receipt, the store refused to return his property and Boyer filed a complaint seeking recovery of his gold and silver.

> The district court found that Boyer's claim was barred because he failed to file a creditor's claim within the time limits contained in § 72-3-803, MCA.

*Wood v. Anderson*, 2017 MT 180, ¶¶ 18, 19, 388 Mont. 166, 399 P.3d 304 (internal citations omitted).

¶23 On Boyer's appeal, we determined the decedent's estate "had actual knowledge of Boyer's claim, and that, based upon the family's representations, Boyer assumed his claim was intact and that no creditor's claim needed to be filed," and held "the estate is estopped from denying the existence and validity of Boyer's claim and that the District Court erred in entering judgment in favor of the estate." *Boyer*, 263 Mont. at 293, 867 P.2d at 1119. We emphasized such a holding must be reached only "under very limited circumstances, as in this case, where an estate has actual notice of a claim and makes representations to the claimant which lead the claimant to believe that it is not necessary to protect his claim." *Boyer*, 263 Mont. at 293, 867 P.2d at 1119.

14

¶24 Equitable estoppel is a principle of equity used to promote justice, honesty, fair dealing and to prevent injustice or a party from taking advantage of his own wrong while asserting his strict legal right. *In re Adoption of D.J.V.*, 244 Mont. 209, 214, 796 P.2d 1076, 1079 (1990). The doctrine is applied under the following standards:

> A party asserting equitable estoppel must establish the following six elements by clear and convincing evidence: 1) the existence of conduct, acts, language or silence constituting a representation or concealment of a material fact; 2) the fact must be known to the party to be estopped at the time of the conduct or the circumstances be such that knowledge of the fact is necessarily imputed to that party; 3) the truth concerning the fact must be unknown to the party claiming estoppel at the time it was acted upon; 4) the conduct must be done with the intent, or at least the expectation, that it will be acted upon by the other party or under circumstances both natural and probable that it will be acted upon; 5) the conduct must be relied upon by the other party and, thus relying, the party must be led to act upon it; and 6) the other party must, in fact, act upon it in such a manner as to change the party's position for the worse.

*Wurl v. Polson Sch. Dist. No. 23*, 2006 MT 8, ¶ 24, 330 Mont. 282, 127 P.3d 436 (citing *Billings Post No. 1634 v. Dept. of Rev.*, 284 Mont. 84, 90, 943 P.2d 517, 520 (1997)).

¶25 Claimants cite to *Boyer* and *Northwestern Bank of Lewistown* in support of their argument that they were similarly "lulled into believing that petitioning the claim[s] was unnecessary." While those cases addressed the initial claim presentation deadline, instead of the post-disallowance filing deadline, this slight difference in procedural posture does not disqualify the potential application of the doctrine of equitable estoppel to these claims, to which we turn.

¶26 Reviewing the matter de novo, we conclude that all of the elements of equitable estoppel are satisfied. The Estate, including both the PR and Breitenbach, had abundant

15

actual notice of the claims, including their complexity and the substantial amount associated with each claim, and had participated in discussions with the Claimants seeking a resolution. Breitenbach, on behalf of the PR, made representations about a Second Extension to the Claimants which he, as an attorney tasked with reviewing the claims, would have reasonably known were likely to be relied upon by the Claimants. The reassurances were clearly made with the expectation that the Claimants would sign the Second Extension with the expectation that they did not need to file petitions for allowance or commence a proceeding against his client by the deadline under the First Extension, evidenced by Breitenbach's stated intent to allay the Claimants' concerns about the timing of the filings. And indeed, Claimants relied on Breitenbach's statements when deciding not to file a petition for allowance or commence any additional proceedings. The Claimants' failure to file a petition or commence a proceeding changed their position for the worse, as the District Court determined their claims were forever barred under application of the claim processing statutes. Our precedent recognizes that, in narrow circumstances such as these, the doctrine is appropriately applied to avoid the injustice that would otherwise result from such justifiable reliance leading to failure to file estate claims.

## CONCLUSION

¶27 The Estate is estopped from barring Claimants' claims under § 72-3-804(3), MCA, for failure to file a petition or action for allowance by the deadline set in the First Extension. We need not reach the issue that the MOU satisfied the requirement of the devisee's consent to the Second Extension. Because all Claimants filed petitions for allowance

16

before the deadline set by the Second Extension on reliance that the Second Extension was valid, it is unnecessary for us to prescribe a new timeframe. The District Court should instead proceed as though the Claimants' petitions were timely filed.

¶28 We reverse and remand for further proceedings consistent with this Opinion.

/S/ JIM RICE

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON